UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Scott R. Wheatman, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 16 C 8639 |
| v. | ) |
| | ) Judge Sara L. Ellis |
| NANCY A. BERRYHILL, Deputy | ) |
| Commissioner of Operations, Social Security | ) |
| Administration,[1] | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Plaintiff Scott R. Wheatman seeks to overturn the final decision of the Commissioner of Social Security (the "Commissioner") denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), 423. Before the Court is Wheatman's appeal of the Administrative Law Judge's ("ALJ") decision denying his application for DIB and the Commissioner's motion for summary judgment. Because the Administrative Law Judge ("ALJ") reasonably supported his determination that Wheatman did not suffer from an impairment or combination of impairments that was severe at the time he was insured, the ALJ did not err in denying Wheatman's petition for DIB. The Court affirms the Commissioner's final decision denying Wheatman's petition for DIB.

## BACKGROUND

### I. Medical History

Wheatman was born in 1962. In March 2005, Wheatman underwent a colonoscopy which resulted in a diagnosis of probable Crohn's disease. AR 283. Between January 2007 and

---

[1] The Court substitutes Nancy A. Berryhill for Carolyn W. Colvin as the proper defendant in this action. Fed. R. Civ. P. 25(d).

January 2009, Wheatman received Remicade infusions at Northwest Gastroenterologist to treat his Crohn's disease. AR 276–282. In the medical records associated with each of his infusions, the physician noted that Wheatman was doing well with the Remicade treatments and had no or minimal symptoms related to his Crohn's disease or other side effects. *Id.*

In January 2010, Wheatman received a Remicade infusion. AR 274. He reported to the doctor that he had experienced bloating and more frequent bowel movements in the prior two months, but that he had not had any incidents of incontinence. *Id.* The doctor observed abdominal distention in addition to the increased frequency of bowel movements. *Id.* Wheatman returned for an infusion in September 2010 and reported that he was doing well since the prior infusion and had had no flares of his Crohn's disease. AR 272.

In June 2011, Wheatman saw Dr. David Sales complaining that he had experienced diarrhea and some urgency for three weeks and that it stopped on its own three days prior to the appointment. AR 269. Wheatman also complained of fatigue. *Id.* Dr. Sales administered a Remicade infusion at this appointment. *Id.* Dr. Sales also noted that the diarrhea was likely infectious, meaning not related to his Crohn's disease, and Wheatman's Crohn's disease was in remission. AR 271. At his next appointment in August 2011, Wheatman reported that he had no incidents of diarrhea since his last visit, but that he had two episodes of urgency, one of which resulted in incontinence. AR 267. He declined a daily medication to avoid these incidents, which the doctor classified as "rare." *Id.* Wheatman also reported psoriatic-like plaques on his arms and foot but noted that they were treated successfully with a topical cream and that they were not temporally related to his Remicade infusions. *Id.* Wheatman received a Remicade infusion and the doctor advised him to monitor the episodes of incontinence and the occurrence of psoriasis. AR 268.

Wheatman received another Remicade infusion in November 2011, at which time he reported no Crohn's symptoms since his August infusion more than three months before. AR 265. Wheatman reported no new skin lesions and that the psoriasis continued to respond to the topical treatment. *Id.* Around this same time, Wheatman saw his primary care physician and reported to her that he was seeing Dr. Sales routinely and that he was doing well with his Remicade infusions. AR 299. Wheatman received his last Remicade infusion in February 2012. AR 262. Again, he had not had any symptoms from his Crohn's disease since his last infusion. *Id.* He stated that his psoriasis had been inactive lately but that he had a topical treatment that was effective as needed. *Id.* Wheatman did not seek any treatment for his Crohn's disease again until May 2013.

In May 2012, Wheatman saw his primary care physician Dr. Cohen. AR 297–98. At this appointment he complained of poor energy when working out and a cold. *Id.* He did not complain of any gastrointestinal symptoms, arthritis, or skin conditions. *Id.* In January 2013, Wheatman again visited Dr. Cohen. AR 294. He complained of wrist stiffness, primarily in his left wrist, with no other joint swelling. *Id.* He did not report any gastrointestinal symptoms at this appointment. AR 294–95. Dr. Cohen ordered a wrist x-ray, which showed mild degenerative arthritis in his left wrist and no arthritis in his right wrist. AR 340.

In May 2013, Wheatman visited Dr. Hersh at NCH Medical Group for a gastroenterology consultation. AR 414. He reported to Dr. Hersh that he tolerated the Remicade treatments well until early 2012, when he began developing arthralgias, swelling, and psoriasis associated with the infusions. Dr. Hersh performed a coloscopy of Wheatman on May 17, 2013. AR 384. The coloscopy showed active Crohn's colitis and internal hemorrhoids, and biopsies showed marked active chronic Crohn's colitis. *Id.* Dr. Hersh prescribed azathioprine, but this resulted in

3

Wheatman experiencing acute pancreatitis, for which he was admitted to the hospital. The pancreatitis resolved with discontinued use of the azathioprine. *Id.* Dr. Hersh then prescribed Humira on August 1, 2013. *Id.* He tolerated Humira well, having no diarrhea and reduced urgency. *Id.*

In August 2013, Dr. Hersh completed a Crohn's and Colitis Residual Functional Capacity Questionnaire. He noted in this form that he began treating Wheatman in May 2013 and that Wheatman's symptoms of diffuse abdominal cramping, bloating, chronic diarrhea, and urgency persisted since May 2012. AR 375. Dr. Hersh also noted that the Remicade infusions caused psoriasis and the Azathioprine caused pancreatitis. AR 374. Dr. Hersh further noted that Wheatman was likely to have good days and bad days and that he would likely need to be absent from work one day per month. AR 377.

## II. Employment History

Wheatman completed high school. AR 31. Wheatman was last employed in 2007 at a mortgage brokerage company. AR 37. He left that job because the company closed. AR 38. He held that position from 2004 through 2007. *Id.* Before that he worked in customer service at a call center and at a car dealership for a couple of years. *Id.* Since leaving his employment at the mortgage brokerage, Wheatman attempted to obtain work as a commercial truck driver and as a security guard but determined he could not do those jobs with Crohn's disease. AR 38–40.

## III. Disability Claim and Hearing Testimony

On March 14, 2013, Wheatman filed for DIB, alleging that he became disabled on January 1, 2008. AR 7. His date last insured was December 31, 2012. *Id.* He received a denial of his claim on July 3, 2013 and again on reconsideration on January 29, 2014. AR 12. Wheatman requested a hearing, which was held on December 9, 2014, and at which Wheatman

had counsel. *Id.* An impartial vocational expert and Mark Oberlander Ph.D., an impartial medical expert, also testified at the hearing. *Id.*

## IV. The ALJ's Decision

On January 30, 2015, the ALJ found that Wheatman was not disabled though December 31, 2012, the date last insured. AR 12–21. Following the five-step analysis used by the Social Security Administration to evaluate disability, the ALJ found at step one that Wheatman had not engaged in substantial gainful activity since January 1, 2008, his alleged onset date, and so he proceeded to step two, where he found that Wheatman's Crohn's disease, anxiety, and wrist arthritis did not constitute severe impairments. AR 14. A severe impairment is one that significantly limits an individual's capacity to perform basic work activities. AR 13.

The ALJ chronologically went through Wheatman's medical history during the time he was insured. The ALJ noted that September 2010 medical records indicate that Wheatman was doing well on Remicade and his Crohn's disease was in remission. The June 2011 medical records show that Wheatman had diarrhea, but it resolved on its own. The ALJ next noted that in August 2011 Wheatman reported two episodes of urgency, once with incontinence, in an eight-week period, but declined additional medication to prevent these flare-ups. The ALJ stated that declining this medication is not consistent with someone who has a severely restricting condition. AR 16.

The ALJ next noted that at the November 2011 doctor's appointment his Crohn's disease was in remission and the psoriasis had not recurred. AR 16–17. And again, at the February 2012 appointment, Wheatman's Crohn's disease appeared to be under control and he was not experiencing any adverse effects from the Remicade. AR 17. This appointment was Wheatman's last appointment with a gastroenterologist during the insured period. The ALJ

noted the only subsequent doctor's appointment Wheatman attended during the insured period pertained to him having low energy; however, the physician attributed this to Wheatman having the flu. AR 17. The ALJ noted that in the period prior to December 2012 there is no indication that Wheatman's Crohn's was not controlled. *Id.*

The ALJ next discussed the gap in Wheatman's treatment for Crohn's disease that spanned February 2012 through May 2013. *Id.* The ALJ stated that Wheatman's claims regarding the severity of his symptoms and limitations are inconsistent and unpersuasive in light of evidence in the record. *Id.* During this approximately fourteen-month gap in treatment, there were no incidents requiring hospitalization or even a visit to a physician. AR 17–18. The ALJ concluded that this indicates Wheatman's Crohn's disease was controlled and stable during this period. *Id.*

The ALJ also considered the medical opinion of Dr. Hersh that Wheatman submitted. AR 18. In August 2013, Dr. Hersh opined that Wheatman's symptoms persisted since May 2012. AR 375–77. The ALJ found that Dr. Hersh's opinion on this matter was merely speculative because there was no treatment record to support this opinion for the period prior to Dr. Hersh establishing care in May 2013. AR 18. Furthermore, the ALJ concluded that Dr. Hersh may have been motivated in part by a desire to help Wheatman. *Id.* He based this opinion on the fact that Dr. Hersh offered an opinion that would help Wheatman establish the existence of his disability during the insured period despite Dr. Hersh having no documentation to support that conclusion. AR 19. Thus, the ALJ gave Dr. Hersh's opinion little weight. *Id.*

The ALJ also considered the opinion of Dr. Cohen and gave it little weight as well. *Id.* Dr. Cohen opined in November 2014 that Wheatman's Crohn's disease would prevent him from working because he requires frequent bathroom breaks and experiences insomnia, cramping, and

6

rectal bleeding. *Id.* However, because there is minimal support for these symptoms occurring during the insured period, the ALJ gave this opinion little weight. *Id.* Dr. Cohen also stated that Wheatman elected to discontinue the Remicade treatments because of the psoriasis and arthritis. Again, the ALJ found these statements unsupported by the contemporaneous medical records and gave the opinion little weight. *Id.*

After discussing all of Wheatman's medical evidence, both the contemporaneous documentation and the documentation from Drs. Hersh and Cohen from outside of the insured period, the ALJ concluded that the allegations of increased intensity and severity of Wheatman's symptoms between February 2012 and May 2013 was not credible. *Id.*

The ALJ then considered the evidence regarding Wheatman's anxiety, depression, and arthritis. AR 19–22. The ALJ concluded that these issues also did not on their own or in combination with the Crohn's constitute a severe impairment.[2] Thus, the ALJ determined that Wheatman was not disabled during the insured period and denied his claim. AR 22.

On March 30, 2015, Wheatman requested a review of the ALJ's decision from the Appeals Council. AR 7. The Appeals Council denied review on July 8, 2016, AR 1–5, making the ALJ's decision the final decision of the Commissioner. Wheatman now seeks judicial review of the ALJ's decision.

## LEGAL STANDARD

### I. Standard of Review

In reviewing the denial of disability benefits, the Court "will uphold the Commissioner's final decision if the ALJ applied the correct legal standards and supported her decision with substantial evidence." *Bates v. Colvin*, 736 F.3d 1093, 1097 (7th Cir. 2013). Substantial

---

[2] Wheatman does not argue that the ALJ erred in this assessment, therefore, the Court does not provide detailed recounting of the ALJ's opinion or the medical records on these issues.

evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971) (citation omitted) (internal quotation marks omitted). Although the Court reviews the entire record, it does not displace the ALJ's judgment by reweighing facts or making independent credibility determinations. *Beardsley v. Colvin*, 758 F.3d 834, 836–37 (7th Cir. 2014). But reversal and remand may be required if the ALJ committed an error of law or the decision is based on serious factual mistakes or omissions. *Id.* at 837. The Court also looks to "whether the ALJ built an 'accurate and logical bridge' from the evidence to her conclusion that the claimant is not disabled." *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009) (quoting *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008)). "[H]e need not provide a complete written evaluation of every piece of testimony and evidence," *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012) (quoting *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005)), but "[i]f a decision 'lacks evidentiary support or is so poorly articulated as to prevent meaningful review,' a remand is required," *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012) (quoting *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002)).

**II.   Disability Standard**

To qualify for DIB, a claimant must show that he is disabled, i.e., that he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Weatherbee v. Astrue*, 649 F.3d 565, 568 (7th Cir. 2011). To determine whether a claimant is disabled, the Social Security Administration uses a five-step sequential analysis. 20 C.F.R. § 404.1520; *Kastner*, 697 F.3d at 646. At step one, the ALJ determines whether the claimant has

engaged in substantial gainful activity during the claimed period of disability. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ considers whether the claimant's physical or mental impairment is severe and meets the twelve-month durational requirement. 20 C.F.R. § 404.1520(a)(4)(ii). At step three, the ALJ determines whether the claimant's impairment(s) meet or equal a listed impairment in the Social Security regulations, precluding substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. Pt. 404, Subpt. P, App. 1. If the claimant's impairment(s) meet or medically equal a listing, the individual is considered disabled; if a listing is not met, the analysis continues to step four. 20 C.F.R. § 404.1520(a)(4)(iii). At step four, the ALJ assesses the claimant's residual functional capacity and ability to engage in past work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant can engage in past relevant work, he is not disabled. *Id.* If he cannot, the ALJ proceeds to step five, in which the ALJ determines whether a substantial number of jobs exist that the claimant can perform in light of his residual functional capacity, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). An individual is not disabled if he can engage in other work. *Id.* The claimant bears the burden of proof on steps one through four, while the burden shifts to the government at the fifth step. *Weatherbee*, 649 F.3d at 569.

## ANALYSIS

In seeking to overturn the ALJ's decision, Wheatman argues that the ALJ incorrectly concluded that his Crohn's disease was not a severe impairment at step two of the sequential evaluation process.

Wheatman first applied for DIB in March 2013, after his date last insured had passed. Because a person must be insured at the time of his disability, typically applying outside of his insured period would preclude Wheatman receiving DIB. 20 C.F.R. 404.315. But, pursuant to

9

agency rules, if Wheatman can show that he became disabled prior to the last date he was insured and that this disability continued unabated until at least one year prior to his application, that tolls the expiration of his insured status. *See* 20 C.F.R. §§ 404.320(a), (b), 404.321(a); POMS DI 25501.240, RS 00605.215. Therefore, to succeed in his application for DIB, Wheatman needs to show that he was disabled continuously from March 2012 through March 2013, when he applied for benefits.

The parties agree that Wheatman satisfies the first prong of the five-step sequential analysis; therefore the Court turns to the second step. At step two, the ALJ must determine whether the claimant has an impairment or combination of impairments that significantly limits his ability to perform basic work-related activities for 12 consecutive months. 20 C.F.R. §§ 404.1521 *et seq.*, 416.909. A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). It is not severe if evidence establishes only a "slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." *Bowen v. Yuckert*, 482 U.S. 137, 154 n.12, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987) (quoting Social Security Ruling 85-28). The ALJ should assess the claimant's symptoms and whether those symptoms are consistent with all available objective medical evidence and other evidence. *See Titles II and XVI: Evaluation of Symptoms in Disability Claims*, SSR 16-3p. The bar for severity is low, but the burden is on the claimant at this stage. *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010).

Looking first at the objective medical evidence created contemporaneously with Wheatman's treatment during the insured period, the ALJ's conclusion that Wheatman's Crohn's disease was not a severe impairment is logical and supported by the evidence. The medical

records at most indicate a few instances of urgency, diarrhea, bloating, cramping, and very minimal incontinence. Between January 2007 and January 2009, the medical records indicate that Wheatman was doing well with his Remicade infusions and had experienced no symptoms of Crohn's disease. In 2010, he continued to do well on Remicade, although he did experience increased bowel movements and some abdominal distention in late 2009 and early 2010. But following his January 2010 infusion he reported no further Crohn's symptoms. In mid-2011, Wheatman reported having diarrhea to his doctor, but the doctor concluded this was unrelated to his Crohn's disease and likely was the result of an infection. The doctor noted that Wheatman's Crohn's disease continued to be in remission. In August 2011, Wheatman again saw his doctor and reported no diarrhea, but two episodes of urgency, one of which resulted in incontinence. He declined medication to help him prevent future incidents like this.

At his November 2011 appointment Wheatman reported no Crohn's symptoms since his August infusion. He visited Dr. Cohen around this same time and reported to her that he was doing well with his Remicade infusions. Wheatman received his last Remicade infusion in February 2012 at which time he reported no symptoms from his Crohn's disease since his last infusion. Thus, according to the objective, contemporaneous medical records, during the insured period there is no documented Crohn's related diarrhea, two incidents of urgency and only one incident of incontinence. All other documentation indicates the Remicade infusions were effectively managing Wheatman's Crohn's disease symptoms.

The next set of documentary evidence is from the period after Wheatman's date last insured. The ALJ reviewed both Dr. Cohen's medical records and Dr. Hersh's records and submissions. Dr. Cohen's medical records from before January 2013 are consistent with the records described above regarding his Crohn's disease. In January 2013, she saw Wheatman for

pain in his wrist and ordered an x-ray. There is no indication in those records that he was experiencing any symptoms of Crohn's disease, despite it being nearly a year since he last had any medical treatment for it. There are no subsequent medical records from Dr. Cohen until November 2014 when she provided a letter stating that it is difficult for him to work because of his fatigue, cramping, insomnia, bloating, and rectal bleeding. She also noted that he discontinued Remicade due to the psoriasis and arthritis. However, neither of these statements is supported by her treatment notes from the insured period. There is no mention of arthritis during the insured period, and all indications in the medical records are that Wheatman's psoriasis was well controlled and for much of the time in complete remission. Therefore, the ALJ reasonably discounted this letter.

The ALJ also reasonably discounted Dr. Hersh's assessment that Wheatman was experiencing severe symptoms of Crohn's disease between May 2012 and May 2013. As the ALJ noted, Wheatman received no treatment for his Crohn's disease during this period. Additionally, at the two doctor's appointments he had during this period with Dr. Cohen, he made no mention of any Crohn's symptoms. The complete lack of documentary support for Dr. Hersh's conclusions, coupled with the contradictory evidence contained in Dr. Cohen's notes amply supports the ALJ's decision to give Dr. Hersh's opinion little weight.[3] An ALJ may properly discredit a medical opinion, even that of a treating physician, so long as he provides "good reasons" for doing so, and "[t]his court upholds all but the most patently erroneous reasons for discounting a treating physician's assessment." *Luster v. Astrue*, 358 F. App'x 738, 740 (7th Cir. 2010); *see also* 20 C.F.R. § 404.1527(d)(2); *Schmidt v. Astrue*, 496 F.3d 833, 842

---

[3] The ALJ also stated that Dr. Hersh may have been motivated in part by a desire to help Wheatman obtain benefits. The Court agrees that given the fact that Hersh's opinion is completely unsupported by the documentary evidence and conspicuously reaches back into the insured period, Dr. Hersh's potential desire to assist Wheatman was likely a factor. However, the lack of evidentiary support alone is sufficient to affirm the ALJ's decision on this point.

(7th Cir. 2007) (ALJ must provide an adequate explanation of his decision not to give controlling weight to the opinion of a treating physician).

Wheatman argues that the ALJ should have recontacted Dr. Hersh to seek clarification of his opinion, and that failure to do so was an error. In some cases, an ALJ must contact a treating physician to obtain clarification, *see* SSR 96-2p, but here, where it is not clarification that is lacking, but a basis for his opinions, additional information from Dr. Hersh would not have aided the ALJ. It is apparent from the complete medical file that Dr. Hersh did not examine Wheatman prior to May 2013.

Wheatman argues that it was an error for the ALJ to rely on Wheatman's gap in treatment to find his description of his symptoms not credible. An ALJ may find a claimant's statements "less credible . . . if the medical reports or records show that the individual is not following the treatment as prescribed," SSR 96-7p, 1996 WL 374186, at *7, but "such evidence should not negatively affect an individual's credibility if there are good reasons for the failure," *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014); *see also Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009) ("[T]he ALJ must not draw any inferences . . . from this failure unless the ALJ has explored the claimant's explanations as to the lack of medical care." (citation omitted) (internal quotation marks omitted)); *Myles v. Astrue*, 582 F.3d 672, 677 (7th Cir. 2009) ("[T]he ALJ was required . . . to consider explanations for instances where [the claimant] did not keep up with her treatment[.]"). Here, Wheatman says he discontinued the Remicade treatment because in his opinion it was causing arthritis and psoriasis. But, as the ALJ noted, these side effects are not supported by the contemporaneous medical records. There is no mention of arthritis in his medical records prior to January 2013 and each mention of his psoriasis indicates that it was well

13

controlled. Thus, the ALJ's determination that Wheatman's description of his symptoms was not credible because he discontinued treatment is adequately supported by the record.

Wheatman also argues that the ALJ did not properly account for the fact that Crohn's is a chronic disease that waxes and wanes in severity. Wheatman does not clearly explain how the ALJ failed to consider the nature of Crohn's or what impact this had on his analysis. It seems Wheatman is arguing that because Crohn's disease is characterized by periods of remission and recurrence, the ALJ should have assumed that despite several years of minimal symptoms and remission, the undocumented period during which Wheatman did not attempt to receive any treatment was likely a period of active Crohn's symptoms. The ALJ adequately supported his conclusion that Wheatman was not suffering severe Crohn's symptoms during this period, and there is no indication he discounted the potential for recurrence of Wheatman's Crohn's symptoms. In the case Wheatman cites on this point, the ALJ erred in finding that evidence of a patient showing some improvement in his multiple sclerosis symptoms was inconsistent with the treating physician's notes. *Vincil v. Comm'r of Soc. Sec.*, No. 12-12728, 2013 WL 2250580, at *12–13 (E.D. Mich. May 22, 2013). The district court held that with a chronic disease like multiple sclerosis periodic signs of remission is not inconsistent with opinions rendered at other times that the claimant suffered severe symptoms. *Id.* The ALJ here discounted no testimony on this basis. Presumably had there been some documentary evidence of Wheatman's symptoms becoming worse during late 2012 to early 2013, the ALJ would have credited these records. Unfortunately, because Wheatman was not receiving any treatment at that time, there are no such records. Therefore, the ALJ did not inappropriately fail to consider the chronic nature of Crohn's disease.

controlled. Thus, the ALJ's determination that Wheatman's description of his symptoms was not credible because he discontinued treatment is adequately supported by the record.

Wheatman also argues that the ALJ did not properly account for the fact that Crohn's is a chronic disease that waxes and wanes in severity. Wheatman does not clearly explain how the ALJ failed to consider the nature of Crohn's or what impact this had on his analysis. It seems Wheatman is arguing that because Crohn's disease is characterized by periods of remission and recurrence, the ALJ should have assumed that despite several years of minimal symptoms and remission, the undocumented period during which Wheatman did not attempt to receive any treatment was likely a period of active Crohn's symptoms. The ALJ adequately supported his conclusion that Wheatman was not suffering severe Crohn's symptoms during this period, and there is no indication he discounted the potential for recurrence of Wheatman's Crohn's symptoms. In the case Wheatman cites on this point, the ALJ erred in finding that evidence of a patient showing some improvement in his multiple sclerosis symptoms was inconsistent with the treating physician's notes. *Vincil v. Comm'r of Soc. Sec.*, No. 12-12728, 2013 WL 2250580, at *12–13 (E.D. Mich. May 22, 2013). The district court held that with a chronic disease like multiple sclerosis periodic signs of remission is not inconsistent with opinions rendered at other times that the claimant suffered severe symptoms. *Id.* The ALJ here discounted no testimony on this basis. Presumably had there been some documentary evidence of Wheatman's symptoms becoming worse during late 2012 to early 2013, the ALJ would have credited these records. Unfortunately, because Wheatman was not receiving any treatment at that time, there are no such records. Therefore, the ALJ did not inappropriately fail to consider the chronic nature of Crohn's disease.

Because the ALJ adequately supported his conclusion that Wheatman did not suffer an impairment or combination of impairments that significantly limited his ability to perform basic work-related activities for 12 consecutive months prior to his applying for DIB, the Court affirms the ALJ's decision.

## CONCLUSION

For the foregoing reasons, the Court grants the Commissioner's motion for summary judgment [23] and denies Wheatman's motion for summary judgment [16]. The Court affirms the ALJ's decision that Wheatman is not entitled to DIB.

Dated: November 27, 2018

_____
SARA L. ELLIS
United States District Judge